# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7089 | **DATE** | 10/29/2003 |
| **CASE TITLE** | Temores vs. SG Cowen, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER. The Court denies the defendants' motion for summary judgment (#29). The case is set for status hearing on November 10, 2003 at 9:30am. to discuss the possibility of settlement. The final pretrial order remains due on December 3, 2003.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | OCT 3 0 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 49 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| JD | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

OCT 3 0 2003

| | |
|---|---|
| DORA TEMORES, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 02 C 7089 |
| SG COWEN, SOCIETE GENERALE, JOSEPH MARINARO, AND DAN CURLEY, | ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Dora Temores has sued her former employer SG Cowen, a subsidiary of Societe Generale, alleging sexual harassment and sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* She has also sued her former supervisors Dan Curley and Joseph Marinaro for assault, battery and false imprisonment. Temores also named all the defendants in a claim of intentional infliction of emotional distress ("IIED").

Temores alleges that between September 2000 and January 2002, Curley and Marinaro made sexually explicit comments to her, forcibly held her in order to kiss her, touched her body and repeatedly made sexual advances toward her. Temores and Curley shared a small office in Chicago; Marinaro worked in New York City. Although Temores, who had human resources responsibilities, knew of SG Cowen's sexual harassment policy, she never reported Curley or Marinaro's conduct to the human resources department. She says she was afraid that Curley and

Marinaro would retaliate against her if she disclosed their behavior. Pl's Dep. at 186, 419. Curley was the head of SG Cowen's Chicago operations, and Marinaro was his boss.

On January 8, 2002, Curley left SG Cowen. Def.'s Facts ¶ 62. A week later, Temores filed a complaint with the EEOC alleging sexual harassment. *Id.* ¶ 67. Temores claims that in late January, Marinaro called her and told her that he was going to give her - and no one else – a $2000 bonus in January and March. Pl.'s Dep. Vol. 3 at 88-89. Temores says that in light of his past behavior and his recent comment that he would be seeing her more frequently because he would be traveling to Chicago more often, she felt that he was giving her the bonus with sexual expectations. *Id.* at 81-82. The day after the conversation, Temores took sick leave, saying the stress caused from enduring more than a year of constant harassment had been debilitating. Pl.'s Facts ¶ 109.

The defendants have filed a motion for summary judgment, arguing that: (1) even if the alleged harassment occurred, SG Cowen and Societe Generale cannot be held vicariously liable for the actions of their supervisors because they exercised reasonable care to prevent any sexually harassing behavior and Temores unreasonably failed to avail herself of the firm's reporting procedures; (2) Temores' tort claims are preempted by the Illinois Human Rights Act; (3) Temores' IIED claim against the corporate defendants is barred by the Illinois Workers' Compensation Act; (4) if the Court grants summary judgment on the Title VII claim but not the state law claims, the Court should decline to exercise supplemental jurisdiction over the state law claims; and (5) Temores cannot collect punitive damages from the corporate defendants. The Court denies the defendants' motion for summary judgment.

**Analysis**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must look at the evidence "as a jury might, construing the record in the light most favorable to the nonmovant and avoiding the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). The Court's "function is not to weigh the evidence but merely to determine if 'there is a genuine issue for trial.'" *Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir. 2002) (citation omitted). "Summary judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Payne*, 337 F.3d at 770 (citation omitted).

1. **Title VII claims**

Temores has sued SG Cowen and Societe Generale for violating Title VII, claiming the corporate defendants should be held vicariously liable for the sexual harassment she suffered at the hands of their supervisors. "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). However, if no tangible employment action is taken by the plaintiff's supervisor,

> a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, see Fed. Rule. Civ. Proc. 8(c). The defense comprises two necessary elements: (a) that the employer

3

exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise.

*Id.* SG Cowen and Societe Generale argue that even if Curley and Marinaro harassed Temores, the corporate defendants cannot be held liable for the hostile work environment created by Temores' supervisors because SG Cowen and Societe Generale are entitled to the affirmative defense outlined in *Ellerth* and *Faragher*.

However, if the Court finds a tangible employment action occurred, we need not consider whether the corporate defendants have established the reasonable care defense. In *Ellerth* the Supreme Court defined a tangible employment action as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761. But this list is not exhaustive – had the Supreme Court meant it to be, it would not have used the phrase "such as" before listing examples of significant changes in employment status. *See Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 93 (2d Cir. 2002) (finding that the use of the words "such as" suggests "the definition given by the Supreme Court is non-exclusive"); *Suders v. Easton*, 325 F.3d 432, 456 (3d Cir. 2003) (same). The Court reads Temores' brief and deposition as raising two distinct theories of tangible employment action, neither of which were enumerated in *Ellerth*: (1) her employment was conditioned upon enduring "severe, pervasive and continuous sexual harassment;" and (2) constructive discharge. Pl.'s Resp. at 11; Pl's Dep. Vol. 3 at 81-82, 88-89. The Seventh Circuit has not considered either theory raised by Temores. Thus, the Court must look to other circuits for guidance.

4

### a. Making employment benefits contingent on submission to abuse

A tangible employment action does not have to involve an economic harm. *Jin*, 310 F.3d at 97. Recently the Second and Ninth Circuits – the only two courts of appeals to consider the issue – concluded that "a plaintiff who contends that she was coerced into performing unwanted sexual acts with her supervisor, by threats that she would be discharged if she failed to comply with his demands, has alleged a tangible employment action under Title VII." *Holly D. v. California Institute of Tech.*, 339 F.3d 1158, 1162 (9th Cir. 2003); *see also Jin*, 310 F.3d at 99. In both *Holly D.* and *Jin*, the plaintiffs alleged that they engaged in sexual conduct with their supervisors because they thought they would lose their jobs if they did not submit to the supervisors' demands. The courts recognized that if the women had refused their supervisors' sexual advances and been fired, the terminations would definitely constitute tangible employment actions. *Holly D.*, 339 F.3d at 1170; *Jin*, 310 F.3d at 98-99. They concluded that "[i]t would be anomalous to find an employer liable when an employee was able to stand up to a supervisor's sexual demands, and therefore provoke an action such as termination, but to find no liability when the employee was unable to refuse and was actually subjected to sexual abuse." *Jin*, 310 F.3d at 99; *Holly D.*, 339 F.3d at 1170.

To show a tangible employment action under this theory, the plaintiff does not need to show that the supervisor "explicitly demanded sex in return for job security." *Holly D.*, 339 F.3d at 1173. "Such a claim may lie either when continued employment has been expressly conditioned on participation in sexual acts or when the supervisor's words or conduct would communicate to a reasonable woman in the employee's position that such participation is a condition of employment." *Id.* The plaintiff does not need to prove that her supervisor "intended

5

that her continued employment would actually be contingent on her compliance with his requests - that is, she need not offer proof of his subjective intent to fire or demote her if she did not comply." *Id.*

In her lengthy deposition, Temores described comments made by Marinaro that a reasonable person in her position could have understood (as Temores says she did) to condition the receipt of an employment benefit on acquiescence to his sexual advances.[1] Pl.'s Dep. Vol. 3 at 81-82, 88-89. Although *Holly D.* and *Jin* deal with making retention of employment contingent upon submitting to sexual mistreatment, the Second and Ninth Circuits' reasoning suggests that a supervisor also commits a tangible employment action when he conditions receipt of a benefit – such as a substantial bonus – on submitting to his sexual advances. The Second Circuit relied heavily on an EEOC publication providing guidance for post-*Ellerth* enforcement that explained:

> If a supervisor undertakes or recommends a tangible job action based on a subordinate's response to unwelcome sexual demands, the employer is liable and cannot raise the affirmative defense. *The result is the same whether the employee rejects the demands and is subjected to an adverse tangible employment action or submits to the demands and consequently obtains a tangible job benefit.* Such harassment previously would have been characterized as "quid pro quo." It would be a perverse result if the employer is foreclosed from raising the affirmative defense if its supervisor denies a tangible job benefit based on an employee's rejection of unwelcome sexual demands, but can raise the defense if its supervisor grants a tangible job benefit based on submission to such demands. The Commission rejects such an analysis. In both those situations the supervisor

---

[1] The Court notes that Temores testified at her deposition that Curley referred to himself as her "sugar daddy" and "the only man in [her] life that's taking care of [her]" and that he tried to get her a full-time salary while she was working part-time, all of which a reasonable person in Temores position might interpret as containing an ulterior motive. Pl.'s Dep. at 371, 305-06. But since Temores does not claim to have believed Curley expected something in return for his kindness, the Court will not consider this evidence in deciding the defendants' motion for summary judgment.

6

undertakes a tangible employment action on a discriminatory basis. The Supreme Court stated that there must be a significant change in employment status; it did not require that the change be adverse in order to qualify as tangible.

EEOC, Enforcement Guidance: Vicarious Employer Liability For Unlawful Harassment by Supervisors, 1999 WL 33305874, at * 5 (June 18, 1999) (emphasis added). The EEOC's enforcement guidelines suggest that conditioning any sort of employment benefit on submitting to sexual abuse constitutes the type of tangible employment action that invokes employer liability – an adverse action is not essential to a claim under a tangible employment action theory of employer liability. This reading is consistent with *Ellerth*, which specifically said "a decision causing a significant change in benefits" constitutes a tangible employment action. *Ellerth*, 524 U.S. at 761.

At her deposition, Temores testified that the day before she called in sick and never returned to SG Cowen, she received a call from Marinaro, in which he told her that he was going to give her an extra $2000 bonus in January and a second $2000 bonus in March that no one else was getting. Pl.'s Dep. Vol. 3 at 88-89. Temores says that in light of Marinaro's past behavior toward her and his recent comments to her that he would be coming to Chicago a lot more now that Curley had resigned, she interpreted the bonus as having strings attached.[2] *Id.* at 81-82. The Court finds that her testimony raises a genuine issue as to whether a reasonable person in her situation would have believed receipt of the bonuses was contingent upon submission to sexual abuse.

---

[2] In contrast, when Curley gave Temores a $12,000 bonus in January 2000, Temores asked Curley if she would owe him anything in return or if the bonus would be used against her in the future, and he explicitly said that he did not want anything from her and the bonus was merit-based. Pl.'s Dep. at 369.

7

One of the hallmarks of a tangible employment action – and the reason why the Supreme Court concluded an employer should be held strictly liable for the action – is that the agency relationship gave the supervisor the power to take the action he has taken against the plaintiff. *See Ellerth*, 524 U.S. at 761-62. In *Holly D.*, the Ninth Circuit explained that an employer should be held liable if a supervisor conditions employment on acquiescence to sexual mistreatment, because it is the power vested in the supervisor by the employer that makes this contingency a credible ultimatum to the employee. *Holly D.*, 339 F.3d at 1169. Similarly, when the supervisor gives the employee a financial bonus with the expectation of receiving sexual favors in return, the agency relationship is evoked because the supervisor's ability to confer the benefit is owed to the power vested in him by the employer. It is therefore in keeping with the agency principles adopted by the Supreme Court in *Ellerth* to find that the corporate defendants could be held strictly liable under Title VII if a jury concluded that Temores reasonably believed that her receipt of the two bonuses was contingent upon her submission to Marinaro's sexual advances. Because a reasonable jury could in fact make such a finding in this case, SG Cowen and Societe Generale are not entitled to summary judgment based on the reasonable care affirmative defense.

b.  **Constructive discharge**

Temores also claims that Curley and Marinaro committed a tangible employment action by creating a work environment so intolerable that she had to take sick leave because of the stress they induced. Temores likens her sick leave to constructive discharge, arguing that

8

"[c]onstructive discharge may be a tangible employment action."[3] Pl.'s Resp. at 10. A constructive discharge occurs "when [an employee] is forced to resign because her working conditions, from the standpoint of the reasonable employee, have become unbearable." *Mosher v. Dollar Tree Stores, Inc.*, 240 F.3d 662, 667 (7th Cir. 2001) (citing *Lindale v. Tokheim Corp.*, 145 F.3d 953, 955 (7th Cir. 1998)). The Seventh Circuit has yet to consider whether constructive discharge constitutes a tangible employment action depriving the employer of the *Ellerth* affirmative defense. *See Hardy v. Univ. of Illinois*, 328 F.3d 361, 364 (7th Cir. 2003) (declining to decide the issue because it was not raised in the district court); *Wolf v. Northwest Indiana Symphony Soc'y*, 250 F.3d 1136, 1142 (7th Cir. 2001) (noting that "we have yet to determine whether a constructive discharge is a tangible employment action within the meaning of *Ellerth* and *Faragher*" and declining to decide the issue because the plaintiff "did not raise a genuine issue of material fact that he was constructively discharged"); *Mosher*, 240 F.3d at 666-67 (same). Because the Court already concluded that Temores' Title VII claims survive summary judgment because she has raised a genuine issue under her first tangible employment action theory, the viability of her constructive-discharge theory is not dispositive of the defendants' motion for summary judgment. But because the issue is likely to arise at trial, the Court will analyze Temores' claim that a constructive discharge is a tangible employment action to determine whether the corporate defendants are precluded from raising the affirmative defense if

---

[3] The defendants argue that Temores should not be able to claim constructive discharge because when she took disability leave she continued as an employee of SG Cowen and collected disability benefits. Def.'s Reply at n. 7. For the purposes of determining whether a tangible employment action occurred, the Court does not find that it matters whether Temores resigned outright or left the workplace never to return but received disability benefits as a result. The Court notes, however, that this distinction might be relevant when determining Temores' damages.

9

a constructive discharge is shown.

Several circuits have considered the question. The Second Circuit has concluded that "constructive discharge does not constitute a 'tangible employment action' as that term is used in *Ellerth* and *Faragher*." *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 294 (2d Cir. 1999); *see also Turner v. Dowbrands, Inc.*, 221 F.3d 1336 (6th Cir. 2000) (citing *Caridad*). The Second Circuit relied on the Supreme Court's discussion of agency principles in *Ellerth* and *Faragher* to reach its conclusion. In *Ellerth* and *Faragher*, the Supreme Court accepted the "aided in the agency relation" standard for employer liability, concluding that "it makes sense to hold an employer vicariously liable for some tortious conduct of a supervisor made possible by the abuse of his supervisory authority." *Faragher*, 524 U.S. at 802; *see also Ellerth*, 524 U.S. at 761-62. Contrasting the actions of co-workers to those of supervisors, the Supreme Court explained:

> When a supervisor makes a tangible employment decision, there is assurance the injury could not have been inflicted absent the agency relation. A tangible employment action in most cases inflicts direct economic harm. As a general proposition, only a supervisor, or other person acting with the authority of the company, can cause this sort of injury. A co-worker can break a co-worker's arm as easily as a supervisor, and anyone who has regular contact with an employee can inflict psychological injuries by his or her offensive conduct. But one co-worker (absent some elaborate scheme) cannot dock another's pay, nor can one co-worker demote another. Tangible employment actions fall within the special province of the supervisor. The supervisor has been empowered by the company as a distinct class of agent to make economic decisions affecting other employees under his or her control.

*Ellerth*, 524 U.S. at 761-62 (citations omitted). In *Caridad* the Second Circuit read this to mean that an employer cannot be held strictly liable for a constructive discharge because "[c]o-workers, as well as supervisors, can cause the constructive discharge of an employee." *Caridad*,

10

191 F.3d at 294.

The Third Circuit has rejected the Second Circuit's reasoning, explaining that "[i]t is of no consequence that constructive discharge may be caused by a co-worker because we are only concerned here with that which is caused by a supervisor. And in that regard, our inquiry is not whether an action may be caused by a co-worker or supervisor, it is whether the supervisor's action constitutes a 'significant change in employment status.'" *Suders v. Easton*, 325 F.3d 432, 457 (3d Cir. 2003) (quoting *Ellerth*, 524 U.S. at 761). The Court agrees with the Third Circuit and the Eighth Circuit, which has concluded without discussion that a constructive discharge constitutes a tangible employment action. *See Jackson v. Arkansas Dep't of Educ., Vocational and Technical Educ. Div.*, 272 F.3d 1020, 1026 (8th Cir. 2001) (citing *Ellerth*, 524 U.S. at 765). The Court reads nothing in *Ellerth* and *Faragher* requiring a rule that an employer cannot be held vicariously liable for any action taken by a supervisor that could have been taken, under other circumstances, by a co-worker. Rather, the question is whether the supervisor's abuse of his authority made the adverse action possible.

In *Ellerth* the Supreme Court decided to apply "the agency principles of vicarious liability for harm caused by misuse of supervisory authority." *Ellerth*, 524 U.S. at 764. It excluded tangible employment actions from the affirmative defense because "a supervisor who takes *official* action against an employee should be treated as acting for the employer." *Reed v. MBNA Marketing Systems, Inc.*, 333 F.3d 27, 33 (1st Cir. 2003) (emphasis in original). Thus an employer should be held vicariously liable for those actions that a supervisor was able to take against an employee by abusing the authority vested in him by the employer. Under this rule, vicarious liability should exist when a supervisor causes a constructive discharge by using the

11

authority vested in him by the agency relationship to make the employee's working environment intolerable. *Cf. Id.* (suggesting a tangible employment action may occur in "cases in which *official* actions by the supervisor - *e.g.*, an extremely dangerous job assignment to retaliate for spurned advances - could make employment intolerable"). Generally, a plaintiff can only show that she was constructively discharged if a "reasonable employee would have concluded that the conditions made remaining in the job unbearable." *Lindale v. Tokheim Corp.*, 145 F.3d 953, 955 (7th Cir. 1998). Because it is possible for a co-worker to cause a constructive discharge, *Caridad*, 191 F.3d at 294, an employer only should be liable for a constructive discharge if the plaintiff can show that her supervisor used the authority vested in him by the employer to create working conditions that a reasonable employee would find to be unbearable.[4]

The Court finds that Temores has raised a genuine issue as to whether Curley and Marinaro used the authority vested in them by SG Cowen and Societe Generale to create working conditions that a reasonable employee would find to be intolerable and that Temores actually found to be unbearable. Temores claims that the frequent harassment by Curley and Marinaro induced so much anxiety and stress that she had to take sick leave and never returned to her job. Temores alleges that for the sixteen months that she spent working in a small office with Curley, he tried to kiss her (Pl.'s Dep. at 108, 210, Pl.'s Ex. L at 302, 304, 305, 307, 314, 315); touched her body sexually (Pl.'s Dep. at 107-08, 197-98); commented on her body (*id.* at 375, Pl.'s Ex. L

---

[4] The Court notes that the threshold for showing a constructive discharge is appreciably higher than the threshold for showing an actionably hostile work environment: to be actionable under Title VII, "a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher*, 524 U.S. at 787. Not all plaintiffs who can prove that an actionably hostile work environment existed and who then left the job will be able to establish that a constructive discharge occurred for which the employer is strictly liable.

12

at 295, 309); let others believe they were sexual partners (Pl.'s Dep. at 99, Pl.'s Ex. L at 299); called her "our girl" and "our bitch" (Pl.'s Dep. at 59-60); told people on the phone "I've got Dora sitting here on my lap" (Pl.'s Ex. L at 295) and "I have Dora on her knees kissing my ass, begging me for her money I have" (*id.* at 308); and induced her to go on social outings with him on which he would make sexual advances toward her (Pl.'s Dep. at 102-08, 194-98, Pl.'s Ex. L at 301-02). Temores also alleges that when she went to New York on business and when Marinaro came to Chicago, he groped her (Pl.'s Dep. at 306); induced her to socialize with him outside of work (*id.* at 393-406, 436-45); kissed her (*id.* at 444-45, 470, 505, Pl.'s Ex. L at 310, 313); offered to start an affair with her (Pl.'s Dep. at 493); and stared at her (*id.* at 468-74).

Under ordinary circumstances, an employee's "failure to object to egregious conditions, or to seek some form of redress is compelling evidence that the employee, or any reasonable worker, would not find the conditions intolerable." *Wolf*, 250 F.3d at 43 (citations omitted). But this is not always the case; *Wolf* indicates that "extraordinary conditions" may exist in which an employee who departs without seeking redress may still be able to maintain a claim of constructive discharge. *Id.* The Court believes a jury could find this is such a case. Temores says she did not complain of the harassment even though it made her work environment intolerable because she feared retaliation. She argues that she could not complain about Curley's behavior because he was the head of SG Cowen's Chicago operations and the human resources department for the firm was in New York, where it could not protect her from Curley. Pl.'s Dep. at 186. Temores says she was afraid of Curley because he had reprimanded and threatened to fire another employee who had asked human resources a question (Pl.'s Dep. at 75-76); he had threatened to "take care of" people with whom she was having problems (*id.* at 334-43); and he

13

knew judo and had a gun (*id.* Vol. 3 at 32-33); and she thought he had been arrested for domestic abuse (*id.* at 335). Temores says she did not report Marinaro's conduct because she believed the human resources department reported to him. *Id.* at 419.

The defendants argue that Temores cannot show that her working conditions were so intolerable that she would have to resign, because she went on disability leave after Curley had left the company. Def.'s Reply n.7. The Court disagrees. If Temores claimed that she was harassed only by Curley, defendants' argument might be persuasive. However, Temores alleges several incidents of sexual abuse by Marinaro, going so far as to state that one incident with Marinaro was more frightening than the incidents with Curley. Pl.'s Dep. at 467-475, 560. She further states that just before she went on sick leave, Marinaro had intimated to her that he would be coming to see her much more often. *Id.* at 459-61; *id.* Vol. 3 at 81. The Court finds that Temores has raised a genuine issue as to whether a reasonable person would have found that the harassment created a situation so unbearable that she felt leaving the workplace was her only option.

But to impose liability on the corporate defendants, Temores must not only show that a reasonable person would find her working environment unbearable – she must also show that Curley and Marinaro used the supervisory authority vested in them by SG Cowen and Societe Generale to create the conditions that made the environment unbearable. As explained above, Temores felt that she had to endure the harassment and could not complain about it because Curley was the head of the corporate defendants' Chicago operations and had threatened to fire those who spoke with the New York office, and she thought the human resources specialists reported to Marinaro. Furthermore, she has offered evidence that Curley and Marinaro forced

14

her to go out socially with them -- and when she did, she says, they groped and kissed her – by implicitly and explicitly telling her she had to come because they were her bosses. Pl.'s Dep. at 105, 194, 397. The Court finds Temores has presented enough evidence to raise a genuine issue as to whether Curley and Marinaro abused their supervisory authority to create an objectively and subjectively unbearable work environment.

Because the Court finds Temores has raised genuine issues of material fact as to whether tangible employment actions occurred, the Court need not consider the corporate defendants' affirmative defense at this time. Thus, the Court does not consider the corporate defendants' claims that they took reasonable care to prevent harassment and Temores unreasonably failed to avail herself of the firm's anti-harassment measures. However, the Court notes that because a jury could find that no tangible employment action occurred in this case, the corporate defendants will be entitled to introduce at trial evidence supporting the reasonable care affirmative defense.

Because the Court has not granted the corporate defendants' motion for summary judgment on the Title VII claims, the defendants' request that the Court deny supplemental jurisdiction over the state law tort claims is moot.

2.  **State law tort claims**

The defendants argue that counts 3 through 9 of Temores' complaint, which raise state law tort claims, are preempted by the Illinois Human Rights Act. *See* 775 ILCS 5/8-111(c). The Illinois Supreme Court has held that common law claims are preempted if they are "inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the [IHRA] itself." *Maksimovic v. Tsogalis*, 177 Ill. 2d 511, 517, 687 N.E.2d 21, 23 (1997). The IHRA does not bar common law tort claims simply because they are "factually related to

incidents of sexual harassment," *Id.* at 516, 687 N.E.2d at 23; rather the question is whether the common law claim is premised upon legal obligations and prohibitions that exist as a matter of Illinois law only under the Act and have no other independent foundation. *See, e.g., Bartoli v. Applebee's Restaurant*, No. 00 C 5954, 2001 WL 40798, at *2 (N.D. Ill. Jan. 17, 2001). If the "plaintiff has established a basis for imposing liability on the defendant independent of any statutory cause of action under the Act," the claims are not preempted by the IHRA. *Maksimovic*, 177 Ill. 2d at 514, 687 N.E.2d at 22.

The Illinois Supreme Court has specifically and unequivocally held that assault, battery and false imprisonment "are long-recognized tort actions which exist wholly separate and apart from a cause of action for sexual harassment under the [IHRA]" and thus are not preempted by the state statute. *Id.* at 517, 687 N.E. 2d at 23. The Court concludes that the same is true of Temores' IIED claim. Such claims have been recognized by the Illinois courts as independent actions since long before the adoption of the IHRA. *See Knierim v. Izzo*, 22 Ill. 2d 73, 174 N.E.2d 157 (1961). The Court is cognizant of the fact that the Seventh Circuit recently found an IIED claim against an employer that "depend[ed] on allegations of sexual harassment" to be preempted by the IHRA. *Quantock v. Shared Mktg. Services, Inc.*, 312 F.3d 899, 905 (7th Cir. 2002). But in this regard, the final word on whether an Illinois statute preempts an Illinois claim comes from Illinois' highest court, which in *Maksimovic* rejected an analysis based on the factual relationship between a claim and the provisions of the IHRA in favor of an analysis based on the source of the legal duty underlying the claim.

We likewise reject defendants' argument that Temores' IIED claim against SG Cowen and Societe Generale is preempted by the Illinois Workers' Compensation Act. The IWCA

16

provides that "[n]o common law or statutory right to recover damages from the employer . . . for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act. . . ." 820 ILCS 305/5(a). Because of this statute, an employee may not bring a common law claim against her employer unless she proves either that her injury was not accidental; that it did not arise from her employment; that it was not received during the course of her employment; or that the injury is not compensable under the IWCA. *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 463, 564 N.E.2d 1222, 1226 (1990).

When a worker's claim against her employer is based on an injury intentionally inflicted on her by a co-employee, the injury is considered "accidental" under the IWCA and thus the worker's claim is preempted unless she can show that the employer directed or expressly authorized the co-employee to commit the acts that caused the injury. *Id.* An allegation that the co-employee was acting within the scope of his authority is not sufficient to give rise to a claim that the employer directed or expressly authorized the co-employee's acts; thus a claim based on a theory of *respondeat superior* is preempted by the IWCA even if the injury was intentionally caused by the co-employee. *Id.* at 465, 564 N.E. 2d at 1227. *See also, e.g., Zakutansky v. Bionetics Corp.*, 806 F. Supp. 1362, 1367 (N.D. Ill. 1992); *Jaskowski v. Rodman & Renshaw, Inc.*, 813 F. Supp. 1359, 1362 (N.D. Ill. 1993). In addition, a claim that management ignored evidence that the conduct was taking place is not sufficient; what is required is "actual direction, encouragement, or participation" by management. *Jaskowski*, 813 F. Supp. at 1361 (citing *Collier v. Wagner Castings Co.*, 81 Ill. 2d 229, 239, 408 N.E. 2d 198, 203 (1980)).

But in this case, Temores has provided evidence that two senior managers participated in

17

the harassment of which she complains. It is not entirely clear that this is sufficient to avoid the preemption bar. The fact that Curley and Marinaro were managers does not by itself make their conduct that of the company for purposes of the preemption analysis; it must be shown that they had "the authority to make decisions and set policy on behalf of" the employer. *Daulo v. Commonwealth Edison*, 938 F. Supp. 1388, 1406 (N.D. Ill. 1996); *Robinson v. Roney Oatman, Inc.*, 97 C 8964, 1999 WL 1102694, at *14 (N.D. Ill. Nov. 23, 1999). But because defendants have not attacked Temores' claim on this basis, instead arguing only generally that the claim is preempted, they are not entitled to summary judgment.

### 3. Availability of punitive damages under Title VII

Lastly, the corporate defendants argue that even if Temores prevails on her Title VII claims, they cannot be held liable for punitive damages. The Supreme Court has held that "in the punitive damages context, an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where those decisions are contrary to the employer's 'good-faith efforts to comply with Title VII.'" *Kolstad v. American Dental Assoc.*, 527 U.S. 526, 545 (1999). "An employer may escape punitive damages liability for its manager's acts . . . if it can demonstrate a good faith attempt to establish and enforce an antidiscrimination policy." *Cooke v. Stefani Management Services, Inc.*, 250 F.3d 564, 568 (7th Cir. 2001). The corporate defendants point out that they had a sexual harassment policy providing employees with multiple methods of reporting misconduct, which was distributed to all employees and discussed at new hire orientation and special sexual harassment training sessions. Def.'s Mot. at 9-10. Furthermore, as soon as Temores filed her EEOC claim, the first time she made the corporate defendants aware of the sexual harassment, an in-house counsel of SG Cowen conducted an

investigation into the allegations. Def.'s Facts ¶ 89.

Temores argues the defendants did not act in good faith to enforce the sexual harassment policy. First, she says that SG Cowen never had enough copies of its sexual harassment policy available so she had to give her copy to new employees. Pl.'s Dep. at 161-77. This by itself is not indicative of bad faith, especially because Temores states that she did receive copies of the policy from SG Cowen. *See Id.* at 171. Second, Temores argues that SG Cowen's investigation of her claims after she filed her EEO complaint was inadequate because she was never interviewed. Pl.'s Resp. at 21. Although Temores had an attorney who insisted on participating in any interview, thus precluding SG Cowen's in-house counsel Gerri Harris from meeting privately with Temores, it does not appear that Harris made any effort to set up an interview. Based on this evidence, the Court finds Temores has raised a genuine issue as to whether the corporate defendants acted in good faith to enforce its sexual harassment policy and therefore denies defendants' motion for summary judgment as to the issue of punitive damages.

## Conclusion

For the reasons stated above, the Court denies the defendants' motion for summary judgment [docket # 29]. The case is set for a status hearing on November 10, 2003, at 9:30 a.m. to discuss the possibility of settlement. The final pretrial order remains due on December 3, 2003.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: October 29, 2003